## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNESE LAMAR SMITH** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-1010** |
| **ROGER GOODELL. et al.** | **SECTION: "G"(4)** |

## ORDER

Before the Court is Defendants Roger Goodell's (the "Commissioner")[1] and the National Football League's ("NFL") (collectively, "Defendants") "Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted."[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion.

## I. Background

### A.    *Factual Background*

Plaintiff Johnese Lamar Smith ("Smith"), proceeding *pro se*, seeks $11 million in damages for the alleged infringement of her registered copyright for a non-dramatic literary work entitled Fantasy Football Parade Extravaganza (the "FFPE"), a 20-page booklet detailing purportedly "unique strategies and ... formula [sic]" for marketing the New Orleans Saints football team (the "Saints").[3]  The FFPE includes ideas related to an infomercial, parade, half-time show, new dance routines for the Saintsations dance team, and new football uniforms, and quotes several studies

---

[1] Roger Goodell is the Commissioner of the National Football League.

[2] Rec. Doc. 9.

[3] Rec. Doc. 1 at ¶ 6

regarding football team ticket sales.[4] Smith alleges that she obtained copyright registration of the

FFPE on January 1, 2006.[5]

In the Complaint, Smith alleges that:

On April 5, 2005, the Complainant forwarded, through certified registered mail, several proposals to top executives and owners in the Saints' organization, a sports franchise in The [sic] National Football League, a non-dramatic literary work entitled, FANTASY FOOTBALL PARADE EXTRAVAGANZA, and later, The [sic] FLEUR-DE-LIS CORPORATE SPONSORSHIP, which promoted several pertinent and unique strategies to increase ticket sales, overhaul the teams' approach to entertaining season ticket holders, and their fans (pre-game entertainment during their home games), gain a corporate sponsor for the Louisiana Superdome, and ultimately, lead the team to an NFL Championship (2010). On April 6, 2005, the U.S. Postal Service mail receipts confirmed that all of the top executives and owners in the Saints' organization received the "FFPE" proposals.[6]

Smith additionally alleges that on April 7, 2005, she received "a correspondence from one of the top

executives with the Saints' organization, which stated  he was advancing FFPE's ideas to the

Director of Marketing."[7] On or about May 31, 2005, according to the Complaint, Smith received a

letter from the Saints' general counsel stating "[t]he National Football League has a policy for non-

solicited submissions."[8] Smith alleges that the Saints "owners' [sic] were moving forward with the

ideas, contexts and the unique strategic characteristics written in FFPE," and that the Saints' website

features ideas that "resembled the context of FFPE strategy and unique characteristics."[9]

---

[4] *Id.* at ¶ 4.

[5] *Id.* at ¶ 5.

[6] *Id.* at ¶ 4.

[7] *Id.* at ¶ 7.

[8] *Id.*

[9] *Id.* at ¶ 9.

**B.      *Procedural Background***

Smith filed the Complaint in this matter on May 2, 2014,[10] wherein she alleges that Defendants "engaged in unfair trade practices, [sic] and unfair competition by using FFPE's unique literary body of works as their own, thus causing irreparable damages to its owner."[11] Defendants filed the pending motion to dismiss on June 24, 2014.[12] Smith filed a memorandum in opposition on July 7, 2014,[13] and Defendants filed a reply memorandum on July 10, 2014.[14] Smith filed a sur-reply on July 22, 2014.[15]

## II. Parties' Arguments

**A.      *Defendants' Arguments in Support***

Defendants  argue that Smith has failed to state a claim for copyright infringement because the Complaint alleges only that Defendants copied "the ideas, contexts and the unique strategic characteristics written in 'FFPE,'" which are not protected by copyright.[16]  Accepting as true Smith's allegation that she has a valid copyright registration for the FFPE, Defendants contend that her copyright registration - and thus, copyright protection - extends only to the specific expression of the facts and ideas contained within the FFPE, but not to the underlying facts or ideas themselves.[17]

---

[10] Rec. Doc. 1.

[11] *Id.* at paragraph 10.

[12] Rec. Doc. 9.

[13] Rec. Doc. 10.

[14] Rec. Doc. 13.

[15] Rec. Doc. 16.

[16] *Id.* (citing Rec. Doc. 1 at p. 5).

[17] *Id.* at p. 9.

Specifically, according to Defendants, the ideas of a "FOOTBALL FANTASY PARADE" and a video infomercial, as well as factual information regarding the Saints' statistics, season schedule, tickets, players, and merchandise, cannot be protected by copyright law.[18]

Defendants additionally contend that the Complaint lacks any factual allegations against the NFL or the Commissioner.[19] Specifically, according to Defendants, Smith does not allege that the NFL or the Commissioner copied, distributed, reproduced, or otherwise infringed her FFPE copyright.[20] Moreover, Defendants aver that Smith has not alleged that the NFL or the Commissioner had access to the FFPE or had knowledge of the FFPE.[21] Moreover, according to Defendants, Smith has failed to identify an infringing work created by the NFL or the Commissioner.[22]

Next, Defendants argue that the Copyright Act preempts Smith's state law claims of unfair trade practices and unfair competition.[23] According to Defendants, the Fifth Circuit applies a two-step process to determine whether a state law cause of action is preempted by the Copyright Act.[24] First, the cause of action is examined to determine if it falls within the subject matter of copyright.[25] Here, Defendants contend, accepting Smith's allegations that the FFPE is a non-dramatic literary

---

[18] *Id.* at p. 11 (citing Rec. Doc. 1 at p. 5).

[19] *Id.* at p. 6.

[20] *Id.*

[21] *Id.*

[22] *Id.* at p. 12.

[23] *Id.*

[24] *Id.* at p. 13 (citing *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995)).

[25] *Id.*

work, the FFPE clearly falls into one of the categories of a copyrightable work.[26] The second prong, according to Defendants, requires the Court to examine the state law cause of action to determine if it protects rights that are "equivalent" to any of the exclusive rights of federal copyright, as provided in 17 U.S.C. § 106.[27] If the Defendants' alleged acts would violate both state law and federal copyright law, then the state right is deemed "equivalent to copyright."[28] Defendants contend that Smith's state law claim under the Louisiana Unfair Trade Practices Act ("LUPTA") is not qualitatively different from the copyright claims because the gravamen of her Complaint is that defendants "use[d] FFPE's unique literary body of works as their own," purportedly by appropriating and copying ideas from the FFPE.[29]

Further, Defendants contend that Smith has not pled any facts establishing an Unfair Trade Practices Act or Unfair Competition claim.[30] In order to recover under LUPTA, according to Defendants, a plaintiff must prove "some element of fraud, misrepresentation, deception, or other unethical conduct."[31] Here, Defendants argue, Smith has failed to plead any facts demonstrating that the NFL or Commissioner had any knowledge of her purported copyrights in the FFPE, that they had access to the FFPE, or that they unethically or fraudulently disregarded those rights.[32]

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at p. 13.

[29] *Id.* at p. 14.

[30] *Id.* at p. 15.

[31] *Id.* (citing *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So. 3d 1053, 1059 (La. 2010)).

[32] *Id.* at p. 16.

**B.**     *Smith's Arguments in Opposition*

In her memorandum in opposition, Smith alleges that:

> [T]he Saints infringed on her copyright from 2005 to the present, and seeks damages that were due upon the time the organization (The Saints [sic]) begin [sic] to use those expressed ideas and formulas that increased their ticket sales, implementations of pre-game entertainment during home games, intimidation or chanting before each games [sic], a parade, and unexploited wealth gained by going to the Super Bowl (2009), prongs which were depicted in FFPE.[33]

Smith contends that her "unique strategies and body of works is [sic] a proven concept and historically, the franchise has never recorded a sold-out of [sic] season tickets, started a waiting list, or proclaimed the buying publics' limited access to Saints tickets."[34]

Smith states that:

> The complaint included attachments which specifically outlined what would happen if the Saints would lease FFPE. (1) The Saints Website; (2) Half Time (pre-game show at home); (3) The Uniforms (emphasis on the black jerseys); (4) The Name (make it more associated with winning and not losing); (5) The Emblem (place the emblem among profitable franchises in the league); (6) The Parade (which happened on February 8, 2010).[35]

It appears to be Smith's position that some of the ideas in the FFPE have been used by the Saints.[36]

Smith next states that the NFL is not subject to taxation as a non-profit 501(c)(3), and that "the NFL and the New Orleans Saints are joint venture partners and serving the Defendants was not erroneous and Plaintiff inducts [sic] the 'single entity' [sic] cited in *American Needle, Inc. v. New Orleans La. Saints*, 496 F. Supp. 2d 941, 943 (2007)."[37] Finally, Smith argues that her claim for

---

[33] Rec. Doc. 10 at pp. 1–2.

[34] *Id.* at p. 5.

[35] *Id.*

[36] *Id.* at p. 26.

[37] *Id.* at pp. 16, 18.

unfair trade practices or unfair competition are brought under the "Federal Trade Commission Act (Clayton Act)," not under LUPTA.[38]

Smith additionally quotes, without providing sufficient explanation or analysis, the following: (1) NFL by-laws;[39] (2) the Saints' and NFL's purported 501(c)(6) status and negotiations with former Louisiana governor Kathleen Blanco;[40] (3) antitrust laws concerning sports telecasts and lobbying efforts;[41] and (4) the NFL's Collective Bargaining Agreement.[42]

## C.   *Defendants' Arguments in Further Support*

Defendants argue, first, that Smith's opposition is untimely and exceeds the page limits set forth in Local Rules 7.5 and 7.7.[43] Next, Defendants contend that Smith's opposition presents no argument or evidence demonstrating that they copied her non-dramatic literary work, and that Smith fails to address Defendants' argument that the Copyright Act preempts her unfair competition and unfair trade practices claims.[44] Defendants reaver that Smith has failed to allege that the Commissioner or the NFL copied her work, or even had access to it.[45] Defendants contend that Smith has failed to plead any facts establishing that the FFPE was passed from "an Executive Vice

---

[38] *Id.* at p. 25.

[39] Rec. Doc. 10 at p. 12.

[40] *Id.* at pp. 12, 19.

[41] *Id.* at pp 18–19.

[42] *Id.* at pp. 16–18.

[43] Rec. Doc. 13 at p. 1.

[44] *Id.* at p. 2.

[45] *Id.* at p. 3.

President of the Saints" to the NFL or to the Commissioner.[46]

Next, Defendants argue that Smith misconstrues the Copyright Act, which specifically excludes protection for "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied."[47] Specifically, Defendants state that the unique strategies, formula, proven concepts for pre-game entertainment and corporate sponsorship are not protected by the Copyright Act.[48]

Defendants next argue that Smith's complaint does not support any alleged Clayton Act claims, and even if it did, such claims would fail as a matter of law because she has not demonstrated both antitrust injury and standing.[49] According to Defendants, Smith has not alleged that Defendants' purported actions had an adverse affect on competition as a whole in the relevant market, or that she is a consumer or competitor in the market in which trade was allegedly restrained.[50] Defendants aver that Smith cannot plead any set of facts that would give rise to a claim under the Copyright Act, or the Clayton Act, and that amendment of her complaint would be futile.[51]

### D.   *Smith's Arguments in Response*

Smith states that she has a valid claim under the Clayton Act because:

Defendants [sic] "unauthorized use" which became their "acquisition" of her copyrighted works began on July 10, 2005, and the restraints and the anticompetitive [sic] occurred when she received the in-house counsel's letter that incorporated both

---

[46] *Id.*

[47] *Id.* at p. 4 (citing 17 U.S.C. § 102(b)).

[48] *Id.*

[49] *Id.* at p. 5.

[50] *Id.* at pp. 5–6.

[51] *Id.* at p. 7.

the NFL and the New Orleans Saints "established policies for unsolicited submission." Therefore, the Saints were able to compete (using FFPE's unique strategies and formula[s] [sic]) against other rivals within its NFL division, the NFC South, which resulted in their progressive gain and the Plaintiff to lose future revenue (which worsen [sic] her position financially).[52]

Next, Smith appears to argue that the FFPE is protected by the Copyright Act because it is "an idea

fixed in a tangible form," and that:

The "Parade" in which [sic] took place on February 8, 2010 is not the same; the "Parade" involving the Saints were "results" from reproducing the works "fixed in a tangible form" within FFPE; the parade became the final "results" prior to a "process" set in motion, e.g. what happens if you add two plus two? Answer: You'll get four.[53]

Smith additionally argues that "[t]here are no other works in the public similar to FFPE," and that,

accordingly, she has demonstrated that "she is entitled to relief and that damages she incurred was

[sic] at the moment the executive vice president announced the exact context within the copyrighted

works of FFPE."[54]

### III. Law and Analysis

**A.**   ***Standard on a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)***

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for

failure to state a claim upon which relief can be granted."[55] "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is

plausible on its face.'"[56] "Factual allegations must be enough to raise a right to relief above the

---

[52] Rec. Doc. 16 at p. 6.

[53] *Id.* at p. 7.

[54] *Id.* at p. 8.

[55] FED. R. CIV. P. 12(b)(6).

[56] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

9

speculative level."[57] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[58]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[59] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[60] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[61] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[62] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[63] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[64] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[65] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim

---

[57] *Twombly*, 550 U.S. at 556.

[58] *Id.* at 570.

[59] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[60] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

[61] *Id.* at 679.

[62] *Id.* at 678.

[63] *Id.*

[64] *Id.*

[65] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

must be dismissed.[66]

## B.   *Copyright Infringement Claim*

Copying is actionable only where the defendant has copied aspects of the plaintiff's work that are original and subject to copyright.[67] "[T]he mere fact that [a plaintiff's works] are copyrighted does not mean that all aspects of those [works] are automatically protected."[68] This is because copyright law does not protect ideas, but rather protects the particular expression of ideas.[69] To establish a claim for copyright infringement, a plaintiff must show: (1) that she owns a valid copyright, and (2) that the defendant copied constituent elements of the plaintiff's work that are original and copyrightable.[70] To succeed on the latter showing, the plaintiff must demonstrate that the alleged infringer copied or "actually used the copyrighted  material in his own work," and that "substantial similarity" exists between the copyrighted work and the allegedly infringing work.[71] Without identifying an accused work to compare to the copyrighted work, a pleading does not plausibly establish infringement.[72]

Smith has not stated a claim for copyright infringement upon which relief may be granted.

---

[66] *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[67] *Positive Black Talk*, 394 F.3d at 367; *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994), *supplemented*  46 F.3d 408 (5th Cir. 1995).

[68] *Kepner–Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir.1994).

[69] *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir. 2000).

[70] *Positive Black Talk, Inc. v. Cash Money Records*, 394 F.3d 357, 367 (5th Cir. 2004), abrogated on other grds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010);  *Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403, 407-08 (5th Cir. 2004). *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994), supplemented  46 F.3d 408 (5th Cir. 1995).

[71] *Bridgmon v. Array Sys. Corp.*, 325 F.3d 527 (5th Cir. 2003).

[72] *Id.*

First, even assuming that she has properly pled ownership of a valid copyright, Smith has failed to allege specific acts of infringement by each Defendant.[73] Smith has not alleged that the NFL or the Commissioner possessed, copied, distributed, or reproduced the FFPE. Additionally, she has not identified an accused work, and, as stated above, without identifying an accused work to compare to the copyrighted work, a pleading does not plausibly establish infringement.[74] Furthermore, Smith has failed to demonstrate that any of the allegedly copied material was in fact copyrightable. As stated above, copyright law does not protect ideas or facts, but rather protects the particular *expression* of ideas or facts.[75]   The Fifth Circuit has held that where all that has been copied is plaintiff's idea, there is no copyright infringement.[76] Smith's copyright claim appears to be based entirely on Defendants' alleged use of the ideas and strategies contained in the FFPE,[77] which are not subject to copyright protection.  Finally, Smith alleges that because she submitted her ideas to the Executive Vice President of the Saints,[78]  the NFL and the Commissioner came into possession of these ideas.  However, Smith has pled no facts permitting a reasonable inference that Defendants proceeded to appropriate these ideas in some way that exceeded the scope of the permission she initially extended to the Saints.  The facts pled in Smith's complaint  do not raise her right to relief above anything other than mere speculation. The Court cannot reasonably infer that the NFL or the

---

[73] *Taylor v. IBM*, 54 Fed. Appx. 794 (5th Cir. 2002) (unpublished) ("Appellants failed to allege specific acts of infringement by each defendant, thereby failing to adhere to the requirements of Fed.R.Civ.P. 8(a).").

[74] *Bridgmon v. Array Sys. Corp.*, 325 F.3d 527 (5th Cir. 2003).

[75] *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir. 2000).

[76] *See, e.g.*, *Kepner-Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 533-34 (5th Cir. 1994); *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1344 (5th Cir. 1994), *opinion supplemented by* 46 F.3d 408 (1995).

[77] Rec. Doc. 1 at ¶ 4.

[78] Rec. Doc. 1-1 at p. 43.

Commissioner copied her alleged work of authorship or used her idea at all based on the allegations set forth in the Complaint.[79] Smith has not stated a claim for copyright infringement upon which relief may be granted.

## C.   *Unfair Trade Practices and Unfair Competition Claim*

Smith's Complaint alleges that:

> The Defendants continues [sic] to infringe on FFPE's copyrights by continuing to engaged [sic] in unfair trade practices, and unfair competition by using 'FFPE's' unique literary body of works as their own, thus causing irreparable damages to its owner.[80]

Although the Complaint does not allege a violation of a specific state or federal statute, Smith's memorandum in opposition to the pending motion states that she "seeks this claim under the Federal Trade Commission Act (Clayton Act)."[81]

The Clayton Act provides a private right of action for any person "injured in his business or property by reason of anything forbidden in the antitrust laws."[82] Generally, a plaintiff seeking relief under the Clayton Act must demonstrate injury to the plaintiff's business or property resulting from the alleged violation and standing.[83] The United States Supreme Court has defined "antitrust injury" as an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful."[84] In the present case, even the most lenient

---

[79] *See Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 n. 7 (5th Cir. 2004).

[80] Rec. Doc. 1 at ¶ 10.

[81] Rec. Doc. 10 at p. 25.

[82] 15 U.S.C. § 15.

[83] *Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007).

[84] *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977) (citations omitted).

interpretation of Smith's allegations does not reveal an antitrust injury. Neither the Complaint nor Smith's briefing sheds light on which antitrust laws Defendants allegedly violated, or what antitrust injury she has allegedly suffered. Smith has not alleged that she is a competitor in the relevant market, nor has she stated what the relevant market is.[85]  Aside from references to the Clayton Act, Smith has provided no facts or arguments from which this Court could determine that raises her right to relief above the speculative level. Smith has failed to state a claim for unfair trade practices or unfair competition, and accordingly those claims must be dismissed.

Whether under a copyright infringement or unfair trade practices theory, the Complaint in this case fails to state a claim upon which relief may be granted because it is "an unadorned, the-defendant-unlawfully-harmed-me accusation."[86]  For the reasons stated above, and considering that Smith has had ample opportunity to inform the Court of the basis of her claims, the Court finds that amendment of the Complaint would be futile.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted"[87] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this   5th   day of February, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[85] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[86] *See Iqbal*, 129 S.Ct. at 1949.

[87] Rec. Doc. 9.